DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Danna Campbell has appealed a decision of the Summit County Court of Common Pleas, Domestic Relations Division, that granted Defendant-Appellee Mark Campbell's motion for credit of $15,406 against his child support arrearages. We reverse.
 I {¶ 2} On August 6, 2003, Defendant-Appellee Mark Campbell ("Father") filed a motion with the magistrate wherein he requested credit against his child support arrearages for monies paid to Plaintiff-Appellant Danna Campbell ("Mother") by Midland Title Co. ("Midland"). Midland was the title company that conducted the title search of certain real property sold by Father on September 6, 2000. Midland paid $15,406 to Mother because Midland failed to detect and satisfy Mother's judgment lien on the certain real property when it was sold by Father.
 {¶ 3} The record reveals that Mother and Father were married on August 1, 1982. Two children were born as issue of the marriage, to wit Mark Brandon and Brian David. The couple divorced on December 3, 1987, and Father was subsequently ordered to pay child support to Mother on behalf of the couples' two minor children. On November 5, 1998, Mother obtained a judgment for $18,737 against Father as a result of his child support arrearages. On July 12, 2000, Mother filed a judgment lien against the real property being sold by Father. Midland failed to detect and satisfy Mother's judgment lien on the real property being sold by Father when it performed a title search in preparation for the September 6, 2000 sale of the real property. The record is not clear as to whether or not Mother filed suit against Midland or merely attempted to collect her judgment lien from the new owner of the real property ("buyer"). Regardless of the underlying circumstances, Mother and Midland executed a "Partial Satisfaction of Judgment and Partial Release of Judgment Lien" ("release agreement") on March 4, 2001. Pursuant to the terms of the release agreement, Midland paid Mother $15,406 in exchange for Mother's "release and discharge [of] all lien, encumbrance, charge, claim or interest which she may have by virtue of [her] [j]udgment" in the real property sold by Father to buyer. The release agreement unambiguously stated that Mother released only her lien on the piece of real property sold by Father on September 6, 2000 that was the subject of the defective title search performed by Midland
 {¶ 4} On May 14, 2003, several years after the settlement agreement was executed, the Summit County Child Support Enforcement Agency ("CSEA") conducted an administrative hearing at which time Father requested that the $15,406 paid to Mother by Midland be credited against his child support arrearages. Father argued that the money had been paid in satisfaction of Mother's judgment lien against Father based on his child support arrearages. On June 3, 2003, the CSEA hearing officer declined Father's request. The trial court stayed the hearing officer's decision pending a magistrate's review of the CSEA hearing officer's decision.
 {¶ 5} On August 6, 2003, Father filed a motion requesting review of the CSEA hearing officer's decision with the magistrate. In that motion, Father requested, among other things, credit for $15,406 against his child support arrearage as a result of the money paid by Midland to Mother. On August 7, 2003, the magistrate held a hearing on Father's motion.[1] The magistrate announced its decision on October 10, 2003 wherein it concluded that the $15,406 payment from Midland to Mother should be credited against Father's child support arrearages. Mother timely objected to the magistrate's decision, arguing that the magistrate's decision was contrary to law and against the manifest weight of the evidence. On February 4, 2004, the trial court overruled Mother's objections and adopted the magistrate's decision granting Father a $15,406 credit against his child support arrearages.
 {¶ 6} Mother has timely appealed the trial court's decision, asserting one assignment of error.
 II Assignment of Error Number One
"The trial court erred in giving [father] a credit in the amount of [$15,406] toward his child support arrearages owed to [mother], which decision was an abuse of discretion and contrary to law and against the manifest weight of the evidence."
 {¶ 7} In her sole assignment of error, Mother has argued that the trial court erred when it credited the $15,406 paid to her by Midland against Father's child support arrearages. Specifically, Mother has argued that because the money was not paid by Father to CSEA, the money cannot be credited against Father's child support arrearages.
 {¶ 8} It is well established that a trial court's decision regarding child support obligations falls within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 9} In support of her argument that the trial court abused its discretion when it granted Father's motion for credit, Mother first has argued that the money she received from Midland was a gift pursuant to R.C. 3121.45.[2] Father has argued that the money was not a gift but rather partial satisfaction of his child support arrearage.
 {¶ 10} R.C. 2301.36 stated, in pertinent part, that
"Any payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to [CSEA] in accordance with the applicable support order shall not be considered as a payment of support, and unless the payment is made to discharge an obligation other than support, shall be deemed a gift." R.C.2301.36(A) (repealed 2001).
 {¶ 11} In the instant matter, it is undisputed between the parties that Father did not pay the $15,406 to Mother. Furthermore, there is no evidence in the record that Midland paid Mother $15,406 on behalf of Father or in satisfaction of Mother's $18,737 judgment against Father. Based on the foregoing, this Court finds that Midland's payment to Mother was not payment of child support by the person responsible for said support. Therefore, we conclude that R.C. 2301.36 does not apply to the instant matter and we reject Mother's argument that the $15,406 payment from Midland to Mother was a gift.
 {¶ 12} In further support of her argument that the trial court erred when it granted Father credit of $15,406 against his child support arrearages, Mother has argued that her settlement with Midland was "in discharge of the liability that [Midland] would have to the buyer of [Father's] property for [Midland] having missed [Mother's] judgment lien in its title search." In response, Father has argued that Mother intended that the $15,406 be applied toward his arrearage, evidenced by her conduct of sending the CSEA a copy of the check payable to her from Midland
 {¶ 13} We find it necessary to first point out the distinctions between a judgment and a judgment lien. It is well established in Ohio that "[j]udgments are not of themselves liens upon property, either real or personal." McCormick v. Alexander
(1825), 2 Ohio 65, 71; see, also, Kessler v. Warner (Oct. 10, 2001), 9th Dist. No. 01CA007762, at 4. A judgment lien against real property is statutory in nature and exists only upon the filing of a certificate of judgment with the clerk of courts of the county where the subject land is located. R.C. 2329.02; see, also, Kessler, supra, at 4; Tyler Refrig. Equip. Co. v.Stonick (1981), 3 Ohio App.3d 167, 169. Thus it follows that a judgment and a judgment lien are separate instruments, and although a judgment lien is predicated upon a judgment, a judgment can exist separate and apart from a judgment lien.
 {¶ 14} In light of the foregoing, we turn to Mother's argument that the release agreement she executed with Midland merely released Midland from liability to buyer for Midland's defective title search, and in no way satisfied her judgment against Father. Our review of the release agreement reveals that it specifically states that Mother released only her right to enforce her judgment lien on the real property that was the subject of the defective title search performed by Midland The release agreement further states that Mother was not "waiving or in any manner affecting her lien, charge or encumbrance upon any land other than the land" being sold by Father. Thus it is clear to this Court that Mother was only surrendering her right to use the real property sold to buyer on September 6, 2000 as a means of collecting on her judgment against Father, thus releasing Midland from any liability to buyer that arose as a result of Midland's defective title search. The release agreement expressly states that Mother retained her right to secure a lien "upon any land other than the land" that was the subject of the defective title search conducted by Midland
 {¶ 15} To find that Midland's payment to Mother was in satisfaction of Mother's judgment against Father would be to "count" Midland's $15,406 payment twice: once as payment for Midland's mistake of not finding Mother's judgment lien, and once as satisfaction of Mother's judgment lien against Father. Mother had every right to both collect against Midland for its defective title search and maintain her judgment against Father based on his child support arrearages.
 {¶ 16} We realize that R.C. 3105.011 allows a trial court to sit in equity when resolving issues of domestic relations. However, equity does not allow the trial court to abuse its discretion and materially alter the bargained for exchange between the two parties to the settlement agreement, Mother and Midland, at the mere request of Father, a non-party to the settlement agreement. As such, the trial court abused its discretion when it credited Midland's $15,406 payment to Mother against Father's child support arrearages as such credit was an abuse of discretion. Mother's judgment against Father remains unaffected by the payment she received from Midland, and she may pursue payment of said judgment through any legal means available to her. Mother's sole assignment of error has merit.
 III {¶ 17} Mother's sole assignment of error is sustained. The judgment of the trial court is reversed and cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Boyle, J., Concur.
[1] The transcript from the magistrate's August 7, 2003 hearing states that at the time of the hearing, a "Hearing Motion" was filed with the magistrate. Our review of the record fails to unearth any motion either time-stamped on August 7, 2003, or styled "Hearing Motion." However, based on the issues presented by Mother on appeal, this Court finds that the "Hearing Motion" is not necessary for us to resolve the instant matter.
[2] This Court notes that on March 14, 2001, the date of the Midland payment to Mother, child support provisions were codified at R.C. 2301.36. On March 22, 2001, R.C. 2301.36 was repealed and replaced by R.C. 3121.45. Therefore, we look to R.C. 2301.36
rather than 3121.45 to determine whether or not Midland's payment to Mother was a gift as she has argued.