OPINION
{¶ 1} Defendant-Appellant, Michael Spier, appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, that granted a divorce between he and Plaintiff-Appellee, Katina Spier, and, among other things, established a child support order and divided the marital property. Michael raises eight issues on appeal which address these aspects of the trial court's divorce decree, but none of the arguments Michael raises in his eight assignments of error have any merit. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 2} Michael and Katina were married in April 1994. At the time of the marriage, Michael owned a home in Canfield, Ohio, which subsequently became the marital residence. The parties have three children who are all unemancipated. During the marriage, Michael worked for General Motors and was the primary wage-earner. Near the end of the marriage, Katina began working for Avon and became a manager. As part of her employment package, Katina paid Avon $135.00 per month for unlimited use of a vehicle, gasoline, and automobile insurance.
 {¶ 3} Katina filed a complaint for divorce in February 2004. After a hearing, a magistrate entered temporary orders dealing with child custody, child support, and spousal support in April 2004. That order, among other things, required that Michael pay child and spousal support, prevented either party from incurring debt on the credit of the other party, and provided that Katina would only be responsible for the monthly expenses set forth in her affidavit of income.
 {¶ 4} While the divorce was pending, Michael fell behind in paying his child and spousal support and incurred an arrearage. Furthermore, he gave several checks directly to Katina, rather than to the child support agency, and sought to have these payments credited toward his arrearage at the final divorce hearing.
 {¶ 5} Prior to the final hearing, the parties entered into an agreement regarding the custody of the children, which left only monetary issues related to child support, spousal support, and the property division for the trial court to decide. They also stipulated that the de facto date the marriage ended was April 3, 2004.
 {¶ 6} During the divorce hearing, Michael requested that he be reimbursed for one-half of the mortgage payments and other expenses he paid while the divorce was pending. He also tried to introduce evidence showing that much of the appreciation in the value of the marital residence since the marriage was due to improvements he made to the home prior to the marriage.
 {¶ 7} In its judgment, the trial court refused to award Michael any increase in the value of his separate property interest in the marital home, finding that he failed to prove that any increase in the value of the home was passive income. It also refused to reimburse Michael for the payments he made toward various obligations while the divorce was pending. The trial court further refused to credit most of the payments Michael made directly to Katina toward his arrearage. Finally, the trial court refused to impute income to Katina based on the automobile-related employment benefits she enjoyed.
 {¶ 8} On appeal, Michael has raised eight assignments of error, but some of these assignments of error address similar subjects. Accordingly, we will address those together.
 Standard of Review {¶ 9} In each of his eight assignments of error, Michael challenges either the manner in which the trial court calculated child support or the manner in which it divided the couple's marital property. We review both child support orders and property divisions under the same standard, abuse of discretion.Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, at ¶ 5;Pauly v. Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-0105. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. This court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. Further, this court should not independently review the weight of the evidence but should be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 Imputing Income for Child Support Purposes {¶ 10} In his first assignment of error, Michael argues:
 {¶ 11} "The court failed to impute necessary income to the Appellee in the Ohio Child Support Guidelines Worksheet pursuant to Ohio Revised Code Section 3109.05(A)(1) and Ohio Revised Code Section 3119.01 through 3119.967 which was set forth in Exhibit B in the fact and conclusions of law order filed by the court on or about February 1, 2005."
 {¶ 12} According to Michael, Katina had two sources of income other than her salary from her employer: 1) income from teaching aerobics and 2) vehicle-related benefits, such as a car, auto insurance, and gasoline reimbursement, from her employer. He believes this income should be imputed to her for the purposes of child support. In particular, Michael argues that R.C.3119.07(C)(7) requires that the vehicle-related benefits be included as part of her income for child support purposes.
 {¶ 13} Michael argues that Katina's aerobics-related income was not included in the child support calculations because he assumes that her Avon-related income would be listed on the first line of the child support computation worksheet, while her aerobics income would be listed on the sixth line of that worksheet. His argument ignores both the plain language of the worksheet and the trial court's findings of fact and conclusions of law.
 {¶ 14} First, line one of the child support computation worksheet does not distinguish between types of employment-related income. Instead, it requires that the trial court use "annual gross income from employment" to fill that line. Michael's claim that a trial court should only include a party's income from his or her primary employer on this line ignores the language in the worksheet. The phrase "annual gross income from employment" clearly contemplates that a party's total income from all employment be listed on this first line of the worksheet. Michael's argument to the contrary is meritless.
 {¶ 15} Second, the trial court's findings of fact and conclusions of law explicitly states at page 18 that Katina was employed both as a district sales manager for Avon and an aerobics instructor. The trial court calculated Katina's total income from both employers to be $40,430.84, the amount listed on the first line of the child support computation worksheet. Michael's claim that the trial court erred by not including Katina's aerobics-related income is factually incorrect.
 {¶ 16} His argument regarding the employment benefits is just as meritless. Michael refers to R.C. 3119.01(C)(7) to argue that these employment benefits are income for the purposes of child support calculations. However, these kinds of benefits are income only if the party receiving those benefits is self-employed, the proprietor of a business, or is a joint owner of a partnership or closely held corporation.
 {¶ 17} R.C. Chapter 3119 requires that the parties' gross incomes be used to calculate a proper amount of child support. R.C. 3119.01(C)(7) defines "gross income" and provides:
 {¶ 18} "`Gross income' means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. `Gross income' includes * * * self-generated income * * *."
 {¶ 19} This definition does not specifically include employment-related benefits as income, leading to the conclusion that they should not be included as income. This conclusion is supported by the statutory definition of "self-generated income."
 {¶ 20} "`Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. `Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses." R.C. 3119.01(C)(13).
 {¶ 21} If the phrase "gross income" included expense reimbursements or in-kind payments received in the course of employment, then there would be no need for the Revised Code to specifically include these kinds of employment-related benefits in the definition of "self-generated income." The specific inclusion of these kinds of benefits in R.C. 3119.01(C)(13) indicates that they are not a part of a person's "gross income" unless that person is self-employed, a proprietor of a business, or a joint owner of a partnership or closely held corporation.
 {¶ 22} This conclusion is not altered by the cases Michael cites. In Pruden-Wilgus v. Wilgus (1988), 46 Ohio App.3d 13, the trial court included employment-related benefits in a husband's income when calculating his child support obligation, but the husband was self-employed at the time of the divorce. Likewise, in Offenberg v. Offenberg, 8th Dist. Nos. 78885, 78886, 79425, 79426, 2003-Ohio-0269, the parent whose employment-related benefits were used to calculate his child support obligation came from the operation of a closely held corporation which he owned. These cases do not support Michael's argument that these kinds of benefits should be imputed to Katina; they merely show that they must be imputed to a parent if the income is self-generated.
 {¶ 23} In this case, the evidence demonstrates that Katina was employed by Avon and, therefore, R.C. 3119.01(C)(13) does not apply to her. The trial court could not have included her employment-related benefits as income for the purposes of calculating child support. Michael's argument to the contrary is meritless.
 Child Support Arrearage {¶ 24} In his second assignment of error, Michael argues:
 {¶ 25} "With regard to the order of the court, specifically at page 36, paragraph 7, the court erred in failing to consider in kind contributions and credibility of the Appellee in establishing that no child support arrearage should have been assessed to the Appellant based upon direct payment to the Appellee as and for the benefit of the parties' minor children."
 {¶ 26} Michael does not challenge the trial court's conclusion that he owed a child support arrearage; rather, he argues the trial court erred by not giving him more credit for payments he made directly to Katina. According to Michael, Katina's testimony demonstrated that her credibility was suspect and that the trial court erred when it relied on her statement that she only received $500.00 for child support payments.
 {¶ 27} R.C. 3121.44 and 3121.45 require that any payment to satisfy a child support obligation be made to the office of child support in the department of job and family services and that any payment made directly to the other parent will be considered a gift, unless the payment is made to discharge an obligation other than child support. These statutes became effective in 2001, but their predecessor, R.C. 2301.36, contained the same mandatory language. Nevertheless, Ohio appellate courts have held that a trial court has the discretion to credited in-kind payments made while a divorce was pending toward a child support arrearage. SeeRodriguez v. Frietze, 4th Dist. No. 04CA14, 2004-Ohio-7121, at ¶ 43; Campbell v. Campbell, 9th Dist. No. 21996,2004-Ohio-5553, at ¶ 8; Neiheiser v. Neiheiser (Jan. 13, 2000), 8th Dist. No. 75184. A trial court's decision to credit in-kind contributions for child support will not be reversed absent an abuse of discretion. Rodriguez at ¶ 43.
 {¶ 28} In this case, the trial court did precisely that; it credited a $500.00 in-kind payment toward the child support arrearage which occurred while the divorce was pending. Michael's argument is that the trial court did not credit him enough. According to Michael, he introduced evidence that he gave her three other checks totaling $2,200.00 and that this amount should also be credited to his arrearage since "the Appellee was not able to prove that those were for anything other than support."
 {¶ 29} This statement shows that Michael misunderstands the burden of proof on this issue. R.C. 3121.45 states that all child support obligations be paid through the child support office and places the burden of rebutting the presumption that any payment not made through that office was a gift. Cox v. Cox (1998),130 Ohio App.3d 609, 616. In other words, Katina did not need to prove that the payments were for something other than support; rather, Michael must prove that the payments were for the purposes of child support.
 {¶ 30} In her testimony, Katina admitted that Michael gave her a check for $1,200.00 on February 19, 2004, but denied that it was for the purposes of child support. Instead, she testified that Michael wrote her the check because her paycheck was improperly deposited in the wrong bank account. She also admitted that Michael wrote her two checks for $500.00 apiece in March 2004. She stated that one of those checks was to reimburse her for charges he made on her credit card and admitted that the other one was for child support.
 {¶ 31} Michael testified that he gave her each of these checks because Katina "needed money for her bills, * * * for this, * * * for that, and for my kids not to go without anything." When specifically asked about each of these checks, Michael's testimony tended to support Katina's version of events. He stated that he gave Katina the February 19th check because she deposited money into the account, but didn't have any money and he "felt sorry for her and wanted to make sure [his] kids had food to live on." He denied knowing whether Katina's check had been improperly deposited in his account. While this version of events does not precisely correlate to the version given by Katina, it is reasonable to interpret Michael's testimony as a garbled version of Katina's version of events. Michael further testified that he gave both of the March checks so Katina could "take care of [his] children" and denied that either check was meant to reimburse Katina for charges to her credit card.
 {¶ 32} Given these facts, the trial court reasonably concluded that the only check which was intended as an in-kind payment for the purposes of child support was one of the $500.00 March checks. Although Michael challenges Katina's credibility, the credibility of witnesses and the weight of the evidence are matters to be determined by the trier of facts. Simoni v.Simoni (1995), 102 Ohio App.3d 628, 634. Accordingly, Michael's second assignment of error is meritless.
 Separate Property {¶ 33} In his third and eighth assignments of error, Michael argues
 {¶ 34} "The court erred at paragraph 12, page 38 of its order in awarding to the Appellee a portion of the certificate of deposit located at Sky Bank to be equally divided between the parties when the certificate of deposit was separate premarital property and no claim, testimony or evidence was made to same during the course of the trial on this matter."
 {¶ 35} "The court failed to adequately protect and preserve the Appellant's premarital interest in the marital residence known as 6900 Kirk Road, Canfield, OH 44406."
 {¶ 36} In these assignments of error, Michael maintains that the trial court erred when it determined the nature and value of his separate property in two respects: 1) by not recognizing that a certificate of deposit was separate property and 2) by undervaluing his separate property interest in the marital residence. He contends that Katina never proved that the certificate of deposit was a marital property or that she made any contribution toward that certificate of deposit. According to Michael, he sufficiently proved that the certificate of deposit was his marital property since it was in his name only. He further argues that the evidence demonstrates that much of the increase in the value of the marital residence was due to improvements he made to the home before the marriage.
 {¶ 37} R.C. 3105.171(B) requires that a trial court determine what constitutes marital property and what constitutes separate property. The phrase "marital property" includes, among other things, "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C.3105.171(A)(3)(a)(i). In contrast, "separate property" includes, among other things, "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).
 {¶ 38} When the parties contest whether an asset is marital or separate property, the presumption is that the property is marital, unless proven otherwise. Sanor v. Sanor, 7th Dist. No. 2001 CO 37, 2002-Ohio-5248, at ¶ 53. The burden of tracing separate property is upon the party claiming its existence.DeLevie v. DeLevie (1993), 86 Ohio App.3d 531, 536. An appellate court applies a manifest weight of the evidence standard of review to a trial court's designation of property as either marital or separate. Barkley v. Barkley (1997),119 Ohio App.3d 155, 159. Therefore, the judgment of the trial court will not be disturbed upon appeal if supported by some competent, credible evidence. Fletcher v. Fletcher, 68 Ohio St.3d 464,468, 1994-Ohio-0434.
 {¶ 39} Although Michael's third assignment of error deals with the trial court's division of the certificate of deposit, he refers to the property divided as an "account" throughout his brief. This leads Katina to conclude that Michael is confusing the Sky Bank certificate of deposit with a Sky Bank savings account. This conclusion may be correct since Michael's argument refers to contributions made to the "account" during the marriage, premarital savings accounts or the lack thereof, and the possible commingling of marital assets in that "account." Of course, a certificate of deposit is not a savings account. So none of the evidence about premarital savings accounts or the commingling of assets in an account have any relevance to whether this certificate of deposit is a marital asset.
 {¶ 40} At page six of its judgment entry, the trial court found as follows:
 {¶ 41} "Defendant testified that he had a certificate of deposit at Mahoning Bank, now known as Sky Bank. Defendant testified that prior to marriage the certificate had an original balance of $2,000.00. Defendant did not present documentation of this account showing the balance prior to marriage. In fact, neither party testified to the present day balance, the term of said certificate, or whether said account actually exists. Plaintiff did not admit that the certificate is Defendant's separate property and requested in her Proposed Findings of Fact and Conclusions of Law that it be divided between the parties. The Court finds that Defendant failed to prove that he has a separate property interest in the certificate. The Court finds that the certificate is a marital asset subject to distribution by the Court."
 {¶ 42} The trial court's description of the facts in this regard is accurate. The only place in the transcript where this certificate of deposit is addressed is in Michael's testimony. He stated that he owned a certificate of deposit with Mahoning National Bank, which is now known as Sky Bank, in the 1980s and that the value of that certificate in the 1980s was $2,000.00, but that it would probably be worth more now. However, he admitted that he could not support his claim that this was a separate asset with any documentation.
 {¶ 43} Although the evidence introduced into the record states that the property is separate property and there is no evidence contradicting that testimony, the trial court is the ultimate trier of fact in this case. It believed that Michael did not prove by a preponderance of the evidence that this certificate of deposit, if it now exists, was actually separate property since he provided absolutely no documentation supporting his claim. The trial court's decision in this regard is reasonable, since Katina had no burden to prove that the property was marital property. Thus, Michael's arguments regarding the certificate of deposit are meritless.
 {¶ 44} The same holds true for Michael's argument that the trial court undervalued his separate property interest in the parties' marital residence. Michael bought the residence in 1988 for $75,000.00 and, at the time of the marriage, it was worth $91,600.00. The trial court found that a mortgage balance of $48,872.00 was outstanding at the time of the marriage. Thus, it concluded that he had a separate property interest in that real estate of $42,728.00 at the time of the marriage.
 {¶ 45} Michael argues this valuation was incorrect. During the divorce hearing, Michael tried to have expert witnesses to gauge the present value of the various improvements he made to the marital residence before the marriage and mentions these attempts in his appellate brief, but the value of the improvements would have been reflected in the value of the home at the time of the marriage. If Michael were to be awarded the value of the home at the time of the marriage and the value of the improvements he made to the home prior to the marriage, then he would be receiving a windfall. The trial court recognized this by finding that "[a]lthough Defendant made many substantial improvements to the residence prior to marriage, those improvements would have been reflected in the value of the property at the time of marriage." Michael's arguments in this regard are meritless.
 {¶ 46} Michael also argues that the trial court erred when it failed to find that he was entitled to any passive interest on his premarital interest in the property. Separate property includes "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C.3105.171(A)(6)(a)(iii). "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse" and includes an increase in the value of property resulting from either inflation or the property's location. R.C. 3105.171(A)(4); Slomcheck v.Slomcheck, 11th Dist. No. 2001-T-0098, 2002-Ohio-4952, at ¶ 11.
 {¶ 47} In this case, the trial court concluded that Michael failed to meet his burden of proof to demonstrate that any increase in the value of the marital residence after the marriage was Michael's passive income, rather than a result of the labor, monetary, or in-kind contribution of either spouse during the marriage. In order to prove that some portion of the marital residence's value was passive income, Michael presented the testimony of an accountant, Louis DiPaolo, who presented two different ways to calculate Michael's passive income. First, DiPaolo used the interest rates published by the federal Treasury Department for a treasury bill to calculate a conservative interest rate. He then used this interest rate to calculate the passive growth in Michael's separate interest in the property, which was $73,900.00 in April 2004. According to DiPaolo, this is the standard practice to estimate passive growth. However, on cross-examination DiPaolo conceded that he did not know if the value of the marital residence appreciated at the same rate as a treasury bill.
 {¶ 48} DiPaolo was also asked to calculate Michael's passive income based on the change in value in the residence during the marriage. According to DiPaolo, the value of the residence increased by 43% during the marriage. He testified that if Michael's separate interest in the property increased at the same rate, then his separate interest in the property would be valued at $61,101.00 at the time of the divorce.
 {¶ 49} The trial court refused to accept either of the options presented by DiPaolo. It found "that the improvements that were made after the parties were married could have very well affected the value of the martial residence" and "were the direct result of labor, monetary, or in-kind contribution from the parties during the marriage." In particular, the trial court pointed to the fact that Michael never presented any evidence showing "that the appreciation on his separate property interest was limited to outside passive forces, such as location or inflation." Given the "insufficient evidence showing that the increase in value was due to passive appreciation," the trial court refused to increase Michael's share of the marital property above $42,728.00.
 {¶ 50} The trial court's conclusion is reasonable and supported by the evidence. Michael bore the burden of proving that any increase in value after the marriage was passive income. The evidence in the record shows that the value of the residence increased during the marriage, but also showed that the couple made improvements to the home during the marriage. Michael failed to introduce any evidence distinguishing from an increase in value due to passive income from the increase in value due to the labor, monetary, or in-kind contribution of either spouse during the marriage. Accordingly, Michael's challenge to the trial court's valuation of his separate interest in the marital residence is meritless.
 Credit for Mortgage Payments while Divorce was Pending {¶ 51} In his fourth and fifth assignments of error, Michael argues:
 {¶ 52} "The court erred in allowing Appellant upon sale or auction of the vacant property owned by the parties only one-half (1/2) credit for any payments made from the date of the entry of February 1, 2005 until the property is sold or auctioned. The Appellant should have been granted one hundred percent (100%) credit for those payments."
 {¶ 53} "At page 41, the court further erred in not granting the Appellant credit for mortgage payments made including payments on insurance and real estate taxes on the former marital residence during the pendency of the divorce and after the stipulated de facto termination date of the marriage which was prejudicial to the Appellant."
 {¶ 54} The parties stipulated that the marriage was terminated on April 3, 2004. After this date, Michael was ordered to continue to make the mortgage payments on the parties' real estate while the divorce was pending. Michael argues the trial court erred when it failed to award him a greater share of the parties' marital real estate, or reimburse him in another manner, for the payments made after the marriage ended. However, Michael waived these arguments by not moving either to set aside or modify the magistrate's temporary order.
 {¶ 55} Civ.R. 53(C)(3)(a) gives magistrates the power to enter orders without judicial approval in, among other things, hearings under Civ.R. 75(N), which governs temporary child support, spousal support, and custody orders while a divorce is pending. If a party is unsatisfied with a magistrate's orders entered under Civ.R. 53(C)(3)(a), then that party may move to set the order aside, stating the party's objections with particularity, within ten days after the magistrate's order is entered. Civ.R. 53(C)(3)(b). A party may also move to modify a temporary order entered under Civ.R. 75(N). Civ.R. 75(N)(2).
 {¶ 56} Courts have held that a party who moves neither to set aside an order entered under Civ.R. 53(C)(3)(a) nor to modify that order cannot raise any issue which could have been addressed in that order at the final divorce hearing. See Douglas v.Douglas (1996) 110 Ohio App.3d 615, 621; Beran v. Beran, 6th Dist. No. WD-03-070, 2004-Ohio-2455, at ¶ 30; Wichman v.Wichman (Mar. 22, 1996), 2nd Dist. No. 95 CA 31. Who will pay the mortgage while a divorce is pending and whether that party will receive credit for that payment are issues that are clearly within the scope of Civ.R. 75(N). For instance, in Watson v.Watson, 10th Dist. No. 03AP-104, 2003-Ohio-6350, at ¶ 14, the appellate court specifically approved of a magistrate's temporary order which ordered one party to make the payments for the parties' mortgage and ordered that the party making the payments "receive credit for one-half of the payments made to the mortgage company and on the equity line of credit."
 {¶ 57} In this case, the magistrate's temporary orders required that Michael pay the mortgage on both parcels of property, but did not specify that he would receive credit for those payments. Michael never moved to set aside that order and he never moved to modify that order. Accordingly, he has waived any argument regarding whether he should receive credit for the mortgage payments on those properties made while the divorce was pending. Thus, these arguments are meritless.
 Division of Marital Property {¶ 58} In his sixth assignment of error, Michael argues:
 {¶ 59} "The Appellee was not assessed her fair portion of the outstanding marital debt."
 {¶ 60} Michael maintains the trial court did not equitably divide the marital debt. He particularly complains about the division of the credit card debt, but he also mentions the home mortgage, utility, tax, insurance, and dental costs associated with the marital debt.
 {¶ 61} Although Michael's argument is framed in the context of the trial court's property division, the record does not support such an argument. Michael introduced evidence of the various aspects of the marital debt in February 2004, when Katina left the marital residence, but he failed to introduce any evidence showing the status of those debts in April 2004, the de facto date the marriage was terminated, or at the time of the final hearing. At the final hearing, he did not ask that the remaining debts be divided between the parties; rather, he asked that the trial court order that Katina reimburse him for one-half of the payments he made toward the bills outstanding at the time the parties separated in February 2004.
 {¶ 62} In essence, even though this assignment of error is couched in terms of property division, it appears to be another effort to challenge the temporary order issued by the magistrate. For the reasons stated above, Michael waived these issues since he moved neither to set aside the magistrate's order nor to modify that order. See Douglas at 621.
 {¶ 63} Furthermore, since the record contains no evidence about the state of these marital obligations at the time of the divorce, the trial court could not have equitably divided these debts. We previously held that a trial court does not need to equitably divide an asset or debt if the record does not provide sufficient evidence for the trial court to value and equitably divide that asset or debt. Didisse v. Didisse, 7th Dist. No. 04 BE 4, 2004-Ohio-6811, at ¶ 23. For these reasons, these arguments are meritless.
 2003 Tax Preparation and Refund {¶ 64} In his seventh assignment of error, Michael argues:
 {¶ 65} "The court failed to adequately divide the 2003 tax refund and give the Appellant credit made to the State of Ohio for the parties' joint marital taxes and payment made to the tax preparer."
 {¶ 66} In its judgment entry, the trial court found that someone received a $763.00 tax refund at the marital residence, but both parties denied receiving that refund. Thus, the trial court found that there was "insufficient evidence concerning the whereabouts of the refund" and it "decline[d] to award either party a share of same." According to Michael, the trial court should have split the tax refund between the parties even though both parties claim they never received the check. He further contends that he should be reimbursed for the costs of preparing and filing the taxes.
 {¶ 67} A trial court does not need to equitably divide an asset if the record does not provide sufficient evidence for the trial court to value and equitably divide that asset. Didisse
at ¶ 23. In this case, both parties denied receiving the tax refund and, without an equitable way to decide which party to believe, the trial court could not have equitably divided that asset. Accordingly, the trial court did not abuse its discretion when it refused to divide the 2003 tax refund.
 {¶ 68} The trial court also did not err when it refused to reimburse Michael for the cost of preparing the taxes and paying back taxes. The trial court refused to reimburse Michael for those expenses because he voluntarily incurred them without first seeking a modification of the magistrate's Civ.R. 75(N) temporary order. As discussed above, the failure to request a modification of a temporary order waives the issue for purposes of appeal. SeeDouglas at 621. Thus, Michael's final assignment of error is meritless.
 Conclusion {¶ 69} Michael challenges various aspects of the divorce decree relating to the property division and child support. However, each of his assignments of error is meritless. He failed to preserve many of his arguments by failing to move to either set aside the magistrate's temporary order or to modify that order and his other assignments of error are not supported by the record. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.