OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Larry Teaberry, Jr., appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division that granted a divorce to Larry and Defendant-Appellee, Marjorie Teaberry, and decided that the appreciation in the value of a business which Larry owned as separate property was a marital asset. On appeal, Larry argues that Marjorie bore the burden of proving that the increase in value was a marital asset and that she did not meet that burden. He further argues that even if some of the asset was marital, it was not all marital and that the trial court erred by saying that the entire increase in value was a marital asset. Finally, Larry contends that the trial court erred when it failed to consider the tax consequences of the property division.
 {¶ 2} Larry is incorrect because he bore the burden of proving that the increase in the value of the business was separate property and failed to meet that burden. There is competent, credible evidence showing that Larry and his brother ran the company together, so Larry's labor contributed to the increase in value and the property is marital. Furthermore, Larry has failed to prove which part of the increase is passive, as opposed to that part which is due to his labor. Thus, the evidence supports the trial court's conclusion that the whole amount of the increase is marital property. Finally, Larry has not demonstrated that the trial court's failure to consider the tax consequences of its property division was civil plain error. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 3} Larry and Marjorie were married in September 1974 and had three children who were all emancipated adults by 2006. In 1992, Larry's parents gave him a gift of 50% of the shares of stock in Winkle Electric. At the time of that transfer, the value of the stock given to Larry was $532,812.50. Larry was a member of the company's management team with the title of Executive Vice President. An expert who valued the business testified that Larry and his brother, who owned the other half of the stock, ran the company.
 {¶ 4} In January 2006, Larry filed a complaint for divorce and Marjorie *Page 2 
counterclaimed for divorce in February 2006. The matter was referred to a magistrate. The parties then agreed on all issues but one, whether the increase in the value of Larry's stock during the course of the marriage was marital property or Larry's separate property. The matter was heard by the magistrate, who issued a decision which concluded that the asset was marital property and evenly divided it between the parties.
 {¶ 5} Larry objected to the magistrate's decision and the trial court concluded that the magistrate had not erred, overruled Larry's objections, and evenly divided the asset between the parties.
 Characterization of Property at Divorce {¶ 6} In this appeal, Larry argues the following five assignments of error:
 {¶ 7} "The trial court committed error as a matter of law by failing to require Appellee, once Appellant established his separate property, to present evidence to attempt to show the increase in value of separate property to be deemed marital property."
 {¶ 8} "The trial court committed error by improperly interpreting marital property in R.C. 3105.171(A)(3)(iii) and ignoring the interpretation of separate property in R.C. 3105.171(A)(3)(b) and passive income in R.C. 3105.171(A)(4)."
 {¶ 9} "The trial court abused its discretion and committed error as matter of law by including the entire rate of growth as a corporation as attributable to a fractional shareholder when the same court found the growth to be the efforts of the Appellant and his brother."
 {¶ 10} "The trial court committed error as a matter of law by relying upon readily distinguishable caselaw."
 {¶ 11} "The trial court committed error as a matter of law by failing to take into account the tax consequences of the property division."
 {¶ 12} All of Larry's assignments of error address the same basic issue; Larry argues that he proved that the shares in the business are his separate property and that the value of the business has increased since he obtained those shares. He believes that Marjorie bears the burden of showing that the increase in value of his separate property *Page 3 
was the result of his "labor, monetary, or in-kind contribution" and that she has not met this burden. His arguments all involve the same issues of law and fact. Accordingly, we will address them together.
 {¶ 13} A trial court has broad discretion when allocating marital assets. Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, at ¶ 5;Stevens v. Stevens (1986), 23 Ohio St.3d 115, 120. Generally, we would review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. However, the characterization of property as separate or marital is a mixed question of law and fact and the characterization must be supported by sufficient, credible evidence. Sanor v. Sanor, 7th Dist. No. 2001 CO 37, 2002-Ohio-5248, at ¶ 53; see also Middendorf v. Middendorf,82 Ohio St.3d 397, 401, 1998-Ohio-0403. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under an abuse-of-discretion standard. Id.
 {¶ 14} A domestic relations court is required, when granting a divorce, to equitably divide and distribute the marital property. R.C. 3105.171(B); Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. In order to do this, the trial court must determine what constitutes marital property and what constitutes separate property.
 {¶ 15} A party's "separate property" includes, among other things, "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). Furthermore, "[p]assive income and appreciation acquired from separate property by one spouse during the marriage" is separate property. R.C. 3105.171(A)(6)(a)(iii). "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). In contrast, "marital property" is defined as, among other things, "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). "Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property." Middendorf at *Page 4 
syllabus.
 {¶ 16} In this case, it is clear that the shares in the company which Larry owns are his separate property via a gift from his parents to him. The only question is whether the appreciation in the value of that business during the course of the marriage is a marital asset.
 {¶ 17} Larry argues that Marjorie bears the burden of proving that this appreciation in value was due to Larry's "labor, monetary, or in-kind contributions" and, therefore, was not passive income. However, we have held that there is a presumption that property is marital and that the party claiming its separate nature bears the burden of proving that it is actually separate property. Sanor at ¶ 53; Spier v.Spier, 7th Dist. No. 05 MA 26, 2006-Ohio-1289, at ¶ 38; see alsoBarkley v. Barkley (1997), 119 Ohio App.3d 155, 160. For example, inSpier, the husband proved that the marital residence was his separate property, but did not prove that the increase in the value of that property during the marriage was passive. See Id. at ¶ 47-50. We affirmed the trial court's conclusion that the increase in value was a marital asset. Id.; see also Balser-Leforge v. Leforge, 12th Dist. No. CA2002-12-047, 2003-Ohio-5878, at ¶ 8-11; Slomcheck v. Slomcheck, 11th Dist. No. 2001-T-0098, 2002-Ohio-4952, at ¶ 11-13.
 {¶ 18} The situation is no different merely because the separate property in this case is Larry's interest in the business, rather than his interest in a marital residence. In either case, the dispute is over whether any appreciation in value of the separate asset during the marriage is passive income. Therefore, Larry bore the burden of proving that the increase in the business's value was not due to the labor, monetary, or in-kind contribution of either spouse.
 {¶ 19} In this case, the evidence in the record shows that Larry owned half the shares in the business and was the executive vice president of the business, one of six members of the management team. The record does not say exactly what duties, if any Larry had with the company. However, Larry's expert stated that "the management team below the President and Executive Vice President levels is relatively inexperienced and currently unable to take control of the Company should the services of both Richard and *Page 5 
Larry become unavailable" and admitted that this statement was merely a way of saying that Larry and his brother ran the company. This is evidence that Larry contributed labor to the company.
 {¶ 20} Larry's expert was unable to quantify exactly how much of the appreciation in the company's value was due to Larry's contributions because he did not know of an accepted methodology for performing such a calculation. However, there is evidence that the company's earnings increased substantially between 2000 and 2006, which would be attributable to Larry and his brother since they ran the company.
 {¶ 21} Although Larry argues otherwise, this case is similar toMiddendorf. In that case, the husband co-owned a stockyard with his brother when he married his wife. Eventually, the parties were divorced. The husband claimed that the increase in value of his business during the marriage was his separate property. According to the husband, the law required that both parties contribute to the increase in the value of a separate asset for that increase in value to be a marital asset.
 {¶ 22} The Ohio Supreme Court disagreed. It held that the contribution of either party to the increase in the value of a separate asset during the marriage made that increase in value a marital asset. Id. at syllabus. It further found competent, credible evidence that the husband's labor contributed to the increase in value since he was an owner and manager of that company.
 {¶ 23} "Max argues that there is no evidence that the increase in the stockyard's value was due to his funds or labor. Max asserts that the increase was due solely to passive appreciation from `market changes.' However, Max's position fails to take into account all of the other factors contributing to the increase.
 {¶ 24} "Passive forces such as market conditions may influence the profitability of a business. However, it is the employees and their labor input that make a company productive. In today's business environment, executives and managers figure heavily in the success or failure of a company, and in the attendant risks (e.g., termination, demotion) and rewards (e.g., bonuses, stock options) that go with the respective position. These individuals are the persons responsible for making pivotal decisions that result in *Page 6 
the success or failure of the company. There is no reason that these factors should not likewise be relevant in determining a spouse's input into the success of a business.
 {¶ 25} "It is true that the stockyard business has inherent, uncontrollable risks, such as market fluctuation and death of the livestock due to disease, which affect profitability. However, monitoring market prices in order to make timely purchases and sales, deciding the numbers of hogs purchased, and deciding whether to contract with farmers to care for hogs are a few of the calculated decisions made by the stockyard management that also affect profitability. Thus, no matter how high hog prices went, the business would not operate, let alone increase in value, without the necessary ingredients of labor and leadership from the owners and management. Making these calculated decisions was part of Max's responsibilities as a livestock buyer and co-owner of the stockyard. Max testified that he spent long hours working there, which included buying and selling hogs.
 {¶ 26} "Both the trial court and the court of appeals found that these efforts directly contributed to the appreciation of the company assets. The trial court found that `the increase in value of Middendorf Stockyard Company was the direct result of the pivotal role which [Max] played in the management of the company during the course of the marriage.' The appeals court found that the Max `played a vital role in the management of the Stockyards. * * * [He] clearly dedicated himself to his work, spending significant amounts of time working to keep his business profitable in an increasingly risky market.' Absent an abuse of discretion, we will not disturb these findings of fact.
 {¶ 27} "Although we note that Pat contributed substantial efforts to the family relationship that freed Max of the responsibilities of the home and children and enabled him to devote more time to the business, we need not reach the issue of the value of her contributions. Because Max's efforts contributed to the appreciation of the Middendorf Stockyards, the requirements of R.C. 3105.171(A)(3)(a)(iii) are met, as the statute requires the contribution of only one spouse. Thus, we find some competent, credible evidence that Max's interest in the stockyard increased in value by $108,541, during Max and Pat's marriage, due to Max's labor." Middendorf at 402-403. *Page 7 
 {¶ 28} In this case, the testimony about the extent of Larry's contributions to the business was not as specific as that inMiddendorf, but the thrust of the evidence is the same. The evidence in this case supports a finding that Larry, along with his brother, ran the company. This means that Larry was "responsible for making pivotal decisions that result in the success or failure of the company."
 {¶ 29} Larry claims that he is not solely responsible for the increase in the company's value and that any increase which is not attributable to his labor should not be counted as marital property. This argument might have some merit if Larry could quantify exactly how much he personally contributed to the increased value. However, Larry's own expert testified that he did not know of an accepted methodology for performing such a calculation. Thus, Larry has failed to prove that any of the increase in the value of the company was passive. Accordingly, the increase in the company's value during the marriage can be fairly attributed to Larry's labor and is, therefore, a marital asset.
 {¶ 30} Larry next argues that the trial court erred when valuing the marital portion of the increase since it did not take the contribution of Larry's brother toward the increased value of the company into account. Larry believes that since he and his brother ran the company together, that only half of the increased value of the company should be attributed to Larry's labor. However, this argument ignores the facts inMiddendorf. In that case, the husband co-owned the company, yet the Ohio Supreme Court held that all of the increased value of his stake in the company was a marital asset. Furthermore, Larry's expert said that he could not quantify the contribution of a particular person to the value of the company. Therefore, the trial court's decision to characterize the entire amount of the increase in value of Larry's stake in the company as a marital asset is supported both by caselaw and the evidence in the record.
 {¶ 31} Finally, Larry contends that the trial court erred in distributing this asset if it is, in fact, a marital asset because it failed to consider the tax consequences of a distribution of this asset. Marjorie argues that Larry cannot assign this issue as error on appeal since he did not object to the magistrate's decision on this basis.
 {¶ 32} Civ. R. 53 (E)(3)(iv) deals with the consequences of not objecting to a *Page 8 
magistrate's finding of fact or legal conclusion.
 {¶ 33} "(iv) Waiver of right to assign adoption by court as error onappeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." Id.
 {¶ 34} In this case, the magistrate found that the increased value of the business was marital property and split that asset equally between the parties without regard for the tax consequences of the division. Larry raised twenty-one objections to the magistrate's decision, but not one of them dealt with the magistrate's failure to consider the tax consequences of its division of this marital asset. Thus, Larry cannot raise this issue absent plain error.
 {¶ 35} In civil cases, a "plain error" review is not favored.Goldfuss v. Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-0401. "Parties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution." Id. at 122, citing Gallagher v.Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 433, 1996-Ohio-0320. Thus, this court should only find plain error in a civil case "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id. at 122-123. This is not such a situation.
 {¶ 36} R.C. 3105.171(F)(6) requires that a trial court consider, among other things, "[t]he tax consequences of the property division upon the respective awards to be made to each spouse" when determining the amount of a distributive award when dividing marital property. However, a trial court should not speculate about the possible tax consequences of a property division. Olenik v. Olenik (Sept. 18, 1998), 7th Dist. No. 94 CA 139. *Page 9 
 {¶ 37} In Olenik, the parties owned some stock in a family-owned corporation at the time of the divorce. The trial court valued that stock at the time of the divorce without regard to the capital gains tax which would be incurred if the stock were sold. This court affirmed that decision, saying that the tax consequences of the sale of that stock were too speculative.
 {¶ 38} "In light of the circumstances surrounding the stock at issue, it cannot be determined that the trial court acted unreasonably, arbitrarily or unconscionably in deciding the tax consequences were too speculative to consider. It could not be determined with certainty when, if ever, appellant would sell the stock thereby incurring capital gains tax consequences. Additionally, no tax rate was provided nor could one be fathomed since no inclination was given as to when the stock would be sold. As a result, the trial court was well within its discretion in refusing to levy tax consequences against appellee when appellant may never experience these consequences himself." Id. at 8.
 {¶ 39} Other courts have held that the tax consequences of a sale of property are speculative absent any evidence of any intention of selling the property. Rosenberger v. Rosenberger, 11th Dist. No. 2004-G-2555,2005-Ohio-1790, at ¶ 74; see also Thomas v. Thomas, 171 Ohio App.3d 272,2007-Ohio-2016, at ¶ 9 (Tax consequences are speculative if the trial court does not order a sale and the evidence shows an intent to maintain the asset); Waller v. Waller, 163 Ohio App.3d 303, 2005-Ohio-4891, at ¶ 30 (There are no tax consequences if the parties are not liquidating an asset). However, a court can consider the tax consequences of a sale of property if the sale of an asset is made necessary by the trial court's distribution of the marital property. See Day v. Day (1988),40 Ohio App.3d 155, 159; Kelley v. Kelley, 12th Dist. No. CA2001-04-087, 2002-Ohio-2317, at ¶ 14.
 {¶ 40} In this case, Larry argues that the trial court's division of the marital property effectively forces Larry to sell some of his property to meet the obligations imposed by the trial court. It is not completely clear whether this is true. While it is clear that Larry does not have liquid assets in an amount necessary to meet his obligations, he does have substantial assets and may be able to obtain a loan to meet those obligations. It is not *Page 10 
clear that Larry will have to sell property. Since civil plain error is such a high standard to meet, we cannot say that the trial court committed plain error when it failed to consider the tax consequences of its property division.
 {¶ 41} In conclusion, the record supports the trial court's conclusion that the increase in the business' value is marital property. Larry bore the burden of proving the separate nature of this increase in value. There is competent, credible evidence showing that Larry and his brother ran the company together, so Larry's labor contributed to the increase in value and the property is marital. Furthermore, Larry has failed to prove which part of the increase is passive, as opposed to the part which is due to his labor, thus the whole amount of the increase is marital property. Finally, Larry has not demonstrated that the trial court's failure to consider the tax consequences of its property division was civil plain error. For all these reasons, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1