SHATTUCK, Appellee,

v.

SHATTUCK, Appellant.

[Cite as *Shattuck v. Shattuck*, 153 Ohio App.3d 622, 2003-Ohio-4230.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 133.

Decided Aug. 8, 2003.

Mary Jane Stephens, for appellee.

Kellie D. Bordner, for appellant.

WAITE, Presiding Judge.

{¶ 1} Appellant Frank A. Shattuck challenges the division of marital assets in a divorce case. Although the parties stipulated to the values of most of the marital

assets prior to trial, appellant also asked the trial court to reimburse him in the amount of $69,072. Appellant claims that this amount is due him for loan installments, insurance, and tax payments he made during the eighteen months that the divorce was pending. The trial court noted that appellant never asked for any temporary orders to allocate mortgage, loan, insurance, and tax payments while the divorce was pending. The trial court found that appellant made the payments voluntarily. The court made no adjustment in the division of marital assets for those payments. We find no abuse of discretion in the trial court's decision, based on the stipulations of the parties and the facts of this case.

{¶ 2} Appellee Diane Shattuck and appellant were married on December 25, 1995. On November 22, 2000, appellee filed for divorce in the Mahoning County Court of Common Pleas.

{¶ 3} The final divorce hearing was set for February 27, 2002. Prior to trial, the parties submitted written stipulations of the current fair market value and marital value of a variety of assets, including the marital home and a number of motor vehicles. The relevant stipulations are as follows:

{¶ 4} "1. Plaintiff [appellee] is using the 1995 Mercedes Benz C–Class C280 Sedan 4D. It has a fair market value of $18,752.50. The marital equity is $18,752.50.

{¶ 5} "2. Defendant [appellant] shall have the 1997 Dodge Dakota Club Sport, which has a fair market value of $9,800. The loan pay off is $8,365.92. The marital equity is $1,434.08.

{¶ 6} "* * *

{¶ 7} "7. Defendant [appellant] shall keep the 2000 PT Cruiser. The fair market value is $17,000 and the loan pay off is $14,819.70. The marital value is $2,180.30.

{¶ 8} "8. Defendant [appellant] shall keep the 1998 BMW Motorcycle. The fair market value is $8,000. The loan pay off is $5,770.35. The marital value is $2,229.65.

{¶ 9} "9. Defendant [appellant] shall keep the 1994 Porsche 911. GEORGE ROMAN APPRAISED THE CAR $30,000. The loan pay off is $22,678.51. THE KELLY BLUE BOOK VALUE IS $50,745.

{¶ 10} "* * *

{¶ 11} "11. The fair market value of 9846 Callawoods [Drive] is $91,000 with a mortgage of $66,666.13, and a second mortgage of $23,232.02. The marital value is $1,101.85.

{¶ 12} "12. The fair market value of 3875 Mercedes [Drive] is $100,000 with a mortgage of $56,960.16. The marital value is $43,039.84."

{¶ 13} During the final divorce hearing, appellant asked to be reimbursed for loan and mortgage payments he made on the motor vehicles and real property listed above. The payments were allegedly made after appellee filed her divorce complaint and before the final divorce hearing took place. Appellant asked for a total of $69,072.

{¶ 14} On June 7, 2002, the trial court filed a judgment entry it styled as findings of fact, conclusions of law, and order. The order granted the parties a divorce and denied appellant's request for reimbursement. Appellant then filed this timely appeal.

{¶ 15} Appellant's sole assignment of error asserts:

{¶ 16} "The trial court erred and abused its discretion in dividing the parties' marital assets and debts and in ruling that defendant/appellant was not entitled to any credit or reimbursement from appellee for payments made during the pendency of the parties' divorce to protect the parties' equity in marital assets."

{¶ 17} Appellant correctly cites the standard of review of decisions involving the division of marital property, which is that the trial court's decision will not be reversed absent an abuse of discretion. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 421 N.E.2d 1293. An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 18} Appellant argues that the division of marital property in a divorce case should be equal unless the trial court determines that an equal division would be inequitable. See R.C. 3105.171(C)(1). Of course, a potentially equal division of marital assets is only a starting point for the court, and the final division may be unequal if the court can explain in sufficient detail why an unequal division is equitable. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.

{¶ 19} Appellant contends that a trial court must also take into account marital debt when dividing the marital property. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 170, 694 N.E.2d 989. The marital property in this case was encumbered by substantial debt at the time the divorce complaint was filed. Appellant paid part of that debt during litigation of the divorce. Appellant believes that this debt should have been part of the trial court's decision-making process in dividing the marital assets. Appellant is correct that marital debt is an aspect of the process of dividing marital assets, but there is no indication that the trial court failed to take the parties' marital debt into account in this case.

{¶ 20} The normal practice during divorce proceedings, according to appellant, is for the trial court to preserve the status quo of all assets during the divorce proceedings. See *Kahn v. Kahn* (1987), 42 Ohio App.3d 61, 68, 536 N.E.2d 678.

Appellant argues that he should have been reimbursed for at least some of the loan, mortgage, insurance, and tax payments if the trial court had properly maintained the status quo of the marital property during the pendency of the divorce.

{¶ 21} Appellee argues that appellant's requests for reimbursement were absurd and vastly exceeded the equity value of some of the assets. For example, appellant asked to be reimbursed $6,624 for a 2000 PT Cruiser automobile that had an equity value at the final divorce hearing of only $2,180.30. In addition, appellee notes that appellant himself solely possessed and used many of the assets in question. This includes the 1997 Dodge Dakota Club Sport, the PT Cruiser, the 1998 BMW motorcycle, and the residence at 3875 Mercedes Place.

{¶ 22} Appellee agrees with the trial court's reasoning the appellant should have asked for temporary support orders during the pendency of the divorce. Appellee argues that appellant has waived any errors by failing to request temporary orders to allocate the loan, insurance, and tax payments, and that any payments he made were voluntary payments that did not require an equitable adjustment of the division of marital assets.

{¶ 23} Appellee also points out that appellant agreed to the stipulated valuations of the marital assets, and that the claims for reimbursement would completely negate the stipulated values. Appellee contends that stipulated property valuations are enforceable by the courts. *Thomas v. Thomas* (1982), 5 Ohio App.3d 94, 97, 5 OBR 208, 449 N.E.2d 478.

{¶ 24} Appellee is correct for the most part, but there is an even stronger reason to affirm the trial court's decision presented in this record.

{¶ 25} The legal basis for appellant's argument is that he used funds from his own separate property to make loan, mortgage, insurance, and tax payments to preserve marital assets during the pendency of the divorce. In a divorce case, a court is usually required to award a spouse his or her own separate property. R.C. 3105.171(D). In some cases, a court may award a credit to the party who uses his or her own separate funds to make mortgage or other loan payments while the divorce is pending. See Turner, Equitable Distribution of Property (2d Ed.1994) 441, Section 6.25. On the other hand, such relief will be denied if the payments were made with marital funds. Id.

{¶ 26} The parties stipulated to the values of all but one of the marital assets involved in appellant's reimbursement request. The parties did not supply a valuation date in their stipulations. It is clear from the record, though, that the stipulated values were meant to be current values as of the date of the final divorce hearing.

{¶ 27} The parties did not stipulate to the de facto date of the termination of the marriage. For purposes of valuing marital property in a divorce case, the default date of the termination of a marriage is the date of the final divorce hearing. R.C. 3105.171(A)(2)(a). The trial court may adjust this date in its discretion if it finds that an inequity arises from using the final divorce hearing date as the date that the marriage terminated. R.C. 3105.171(A)(2)(b).

{¶ 28} Prior to trial, appellant's attorney explained to the court that he would be attempting to establish October 2000 as the de facto date of the termination of the marriage. The purpose of proving this, according to appellant's attorney, was to allow the court to make an adjustment to the stipulated valuations of some of the items of marital property to account for the loan, mortgage, insurance, and tax payments appellant made from October 2000 to the date of the final divorce hearing, February 27, 2002.

{¶ 29} Appellant's counsel asked the trial court to do two things: (1) find that the marriage was actually terminated in October 2000 and (2) make an adjustment in the present stipulated valuations of certain motor vehicles and real property to adjust for loan payments that appellant made between October 2000 and February 27, 2002. It is obvious that appellant's request for reimbursement is pertinent only if the de facto date of termination of the marriage was prior to February 27, 2002. If appellant made the payments before the marriage was officially terminated, the funds he used in order to make the loan payments would presumably have been marital funds, not his own separate property. Marital property is "[a]ll real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage * * *." R.C. 3105.171(A)(3)(a)(i). There would be no reason for the trial court to credit appellant for spending his separate property if he used marital funds to make the various payments.

{¶ 30} The trial court found that the marriage terminated on the date of the final divorce hearing, February 27, 2002. Appellant does not challenge or even mention this very crucial fact in his brief on appeal. Once the trial court decided that the marriage terminated on February 27, 2002, appellant's stipulated valuations of the various marital assets practically guaranteed that his request for reimbursement would be denied. Appellant offered no evidence that he actually expended his own separate funds to make any of the payments in question.

{¶ 31} The trial court based its decision on appellant's failure to request temporary orders allocating the various debt payments while the divorce was pending. The trial court is correct that Civ.R. 75(N)(1) confers on the domestic relations court the power to make temporary orders concerning loan, mortgage, and other payments during the pendency of a divorce. Civ.R. 75 deals with a number of aspects of divorce, separation, and legal separation actions. Civ.R.

75(N)(1) impliedly allows the court to make temporary orders regarding loan and mortgage payments.

{¶ 32} If appellant had requested temporary orders during the pendency of the divorce regarding the loan, mortgage, and other payments, the domestic relations court could also have earlier addressed the concerns raised by appellant. For example, the domestic relations court could have determined whether appellee should have been responsible for loan payments on vehicles that were in appellant's sole possession or whether the assets were even worth preserving, given the high debt associated with the assets. Appellant made no such request, as the trial court noted in its final entry.

{¶ 33} This is not to suggest that the failure to request temporary orders concerning debt payments is always fatal to a request for reimbursement of those payments during the final divorce proceedings. A domestic relations court has broad discretion in these matters. In appellant's situation, the failure to request temporary orders was a strong indication to the trial court that the payments were made voluntarily. Furthermore, there is no evidence in the record that appellant actually used separate funds to make the various payments. Appellant gave the domestic relations court little, if any, factual basis for granting his request for reimbursement.

{¶ 34} In conclusion, appellant's arguments are unpersuasive, because he agreed to the valuations of the marital assets and agreed (or failed to challenge) that the marriage terminated on February 27, 2002, the date of the final divorce hearing. By conceding those two points, it is clear that the loan, mortgage, insurance, and tax payments he made were made with marital funds and that appellant is not owed any reimbursement. Appellant failed to provide the trial court a factual basis to conclude that there was some inequity in those voluntary payments, or that the payments were even made from appellant's separate funds. There was no abuse of discretion in the trial court's decisions, and appellant's sole assignment of error is overruled. We affirm the judgment of the trial court in full.

Judgment affirmed.

VUKOVICH, J., concurs.

DEGENARO, J., concurs in judgment only.