OPINION
 {¶ 1} Plaintiff-appellant, Gloria Galloway, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted a divorce, terminating the marriage between plaintiff and defendant-appellee, Nadeem Khan. Because the trial court committed no reversible error, we affirm.
 {¶ 2} Plaintiff and defendant were married on April 21, 1990. Two sons were born as issue of the marriage, Nadeem Khan, Jr., born May 6, 1993, and Corey Khan, born November 26, 1998. Both parties are physicians employed at Children's Hospital in Columbus, Ohio. Plaintiff, a pediatric neurologist, earns approximately $158,000 per year; defendant, a pediatric critical care specialist, earns approximately $184,000 per year.
 {¶ 3} Plaintiff filed a complaint for divorce on November 25, 2003 on grounds of extreme cruelty, gross neglect of duty, and incompatibility; defendant filed an answer and counterclaim on December 4, 2003 seeking a divorce from plaintiff on the same grounds. Upon the parties' separate motions, the trial court issued restraining orders enjoining the parties from, among other things, withdrawing funds from bank accounts other than checking accounts.
 {¶ 4} The trial court appointed a guardian ad litem ("GAL") for the parties' children and through its magistrate issued temporary orders. As relevant here, the temporary orders required the parties to pay their own post-separation credit card debt, required plaintiff to pay the mortgage on the marital residence, and required defendant to pay child support to plaintiff in the amount of $1,050 per month plus processing charge. Upon plaintiff's motion, the temporary orders were modified to increase defendant's child support obligation to $1,986 per month plus processing charge, retroactive to February 1, 2004, the date the parties separated. Both parties filed motions for shared parenting, along with proposed shared parenting plans.
 {¶ 5} Following a four-day trial, the trial court filed a judgment entry/decree of divorce on January 30, 2006. The trial court granted the parties a divorce, divided the marital property, allocated parental rights and responsibilities, and ordered defendant to pay child support in the amount of $700 per child per month plus processing charge.
 {¶ 6} Plaintiff timely appeals, assigning eleven errors:
 1. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO DIVIDE THE MARITAL ASSETS AND MARITAL LIABILITIES EQUALLY.
 2. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN ORDERING THAT THE PROCEEDS FROM THE SALE OF THE JOHNSTOWN ROAD PROPERTY BE DIVIDED EQUALLY.
 3. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DIVIDING THE FUTURE NET EQUITY IN THE MARITAL RESIDENCE EQUALLY.
 4. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO CONSIDER MARITAL FUNDS EXPENDED, WHILE THE DIVORCE WAS PENDING, IN VIOLATION OF A RESTRAINING ORDER.
 5. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO CONSIDER WIFE'S ATTORNEY'S FEES WHICH EXISTED AS OF THE DATE OF TRIAL.
 6. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO REIMBURSE WIFE FOR THE ECONOMIC MISCONDUCT ON THE PART OF HUSBAND.
 7. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN NOT ORDERING HUSBAND TO PAY THE CHILD SUPPORT ARREARAGE FROM THE NET PROCEEDS FROM THE SALE OF THE FORMER MARITAL RESIDENCE.
 8. THE TRIAL COURT ABUSED ITS DISCRETION AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DETERMINING THE AMOUNT OF CHILD SUPPORT TO BE PAID BY DEFENDANT-APPELLEE.
 9. THE TRIAL COURT ABUSED ITS DISCRETION AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DETERMINING THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES, AND IN ADOPTING HUSBAND'S SHARED PARENTING PLAN.
 10. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND RENDERED A DECISION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN ALLOWING HUSBAND TO REMOVE THE MINOR CHILDREN TO PAKISTAN.
 11. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A DIVORCE TO DEFENDANT, WHEN THERE WAS NO CORROBORATING EVIDENCE, AND NO AMENDMENTS TO THE PLEADINGS TO CONFORM TO THE EVIDENCE WHICH WAS PRESENTED.
 I. First Assignment of Error
 {¶ 7} Plaintiff's first six assignments of error generally contend the trial court erred in failing to divide the marital assets and liabilities equally; we will address plaintiff's specific arguments in turn.
 {¶ 8} When dividing marital assets and liabilities, a domestic relations court must determine what constitutes marital property and what constitutes separate property; it then must divide the marital and separate property equitably between the spouses in accordance with R.C.3105.171; see R.C. 3105.171(D) (providing that the court generally disburses a spouse's separate property to that spouse). The court must divide the marital property equally unless an equal division would be inequitable. R.C. 3105.171(C)(1); see, also, Neville v. Neville,99 Ohio St.3d 275, 2003-Ohio-3624, at ¶ 5. In addition, the trial court must make written findings of fact to support its determination that the marital property has been equitably divided and must "specify the dates it used in determining the meaning of `during the marriage.'" R.C. 3105.171(G).
 {¶ 9} A domestic relations court enjoys broad discretion in fashioning a division of marital property, and its decision will be not reversed absent an abuse of that discretion. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 94; Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 406. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. A reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131. A court should not review discrete aspects of a property division out of the context of the entire award. Baker v. Baker (1992), 83 Ohio App.3d 700, 702. Rather, a court should consider whether the trial court's disposition of marital property as a whole resulted in a property division which was an abuse of discretion. Id.
 {¶ 10} Plaintiff's first assignment of error challenges the trial court's decision to make the parties responsible for their separate post-separation credit card debt. In its judgment entry/decree of divorce, the trial court adopted a Stipulation the parties filed on October 5, 2005. As part of the Stipulation, the parties agreed that the duration of the marriage was from the date the parties were married, April 21, 1990, to the date of the final hearing, September 7, 2005. The Stipulation also included an "Agreed Asset and Liability Statement" which not only assigned a value to each of the marital assets and liabilities but also allocated those assets and liabilities between the parties.
 {¶ 11} The trial court adopted the valuations set forth in the stipulated asset and liability statement but rejected plaintiff's request to divide her post-separation credit card debt and include it on the balance sheet. The trial court instead determined that each party would be responsible for his or her own post-separation credit card debt. Plaintiff contends the court's determination was tantamount to using a de facto termination date, the February 1, 2004 separation date, for the credit card debt while using the date of final hearing for the remaining assets and liabilities in contravention of the Stipulation and R.C. 3105.171(A)(2) and (G). Plaintiff further asserts the trial court did not support its unequal division of the marital property with factual findings as required by R.C. 3105.171(G).
 {¶ 12} While plaintiff contends the trial court incorrectly used the separation date to value the parties' credit card debt, her argument actually contests the trial court's allocation of the parties' liabilities. The magistrate issued a temporary order requiring the parties to pay their own credit card debt during the pendency of the divorce action. The trial court apparently incorporated that decision into her final order, but plaintiff never objected to the magistrate's temporary order. Plaintiff thus waived her argument by failing to move to either set aside or modify the magistrate's temporary order.
 {¶ 13} Civ.R. 53(C)(3)(a) permits a magistrate to enter orders without judicial approval in, among other things, hearings under Civ.R. 75(N). Spier v. Spier, Mahoning App. No. 05 MA 26, 2006-Ohio-1289, at ¶ 55; see, also, Shattuck v. Shattuck, 153 Ohio App.3d 622,2003-Ohio-4230, at ¶ 31 (holding that Civ.R. 75[N] impliedly permits a magistrate to issue a temporary order allocating the parties' debts while the divorce is pending). If a party is unsatisfied with a magistrate's order entered under Civ.R. 53(C)(3)(a), that party may move to set the order aside, stating with particularity the party's objections, within ten days after the magistrate's order is entered.Spier, supra, citing Civ.R. 53(C)(3)(b). A party also may move to modify a temporary order entered under Civ.R. 75(N). Id., citing Civ.R. 75(N)(2).
 {¶ 14} A party who neither moves to set aside an order entered under Civ.R. 53(C)(3)(a), nor moves to modify that order, cannot raise any issue which could have been addressed in that order at the final divorce hearing. Spier, at ¶ 56, citing Douglas v. Douglas [sic] (1996),110 Ohio App.3d 615, 621. In this case, the magistrate's temporary order required that each party pay his or her individual debts. Although plaintiff moved to modify the temporary order pursuant to Civ.R. 75(N)(2), her request was limited to modification of temporary child support. Accordingly, plaintiff waived any argument regarding the allocation of the parties' post-separation credit card debt.
 {¶ 15} Moreover, the trial court did not abuse its discretion in allocating the post-separation credit debt. The trial court has discretion to make an equitable division of martial assets and liabilities when an equal division would be inequitable, R.C.3105.171(C)(1), but it must make written findings of fact to support its determination that the marital property has been equitably divided. R.C.3105.171(G).
 {¶ 16} Here, the Stipulation the trial court adopted includes valuations of the assets and liabilities per the parties' agreement, including the parties' credit card debt. Nothing indicates the trial court wavered from those valuations. To the contrary, the trial court "approve[d] the Stipulation insofar as the amount of each credit card debt is concerned." (Judgment Entry/Decree of Divorce, at 8.) A trial court does not abuse its discretion when it uses the values the parties provide to determine the value of marital property. Drake v. Drake,
Butler App. No. CA2001-10-247, 2002-Ohio-6106, at ¶ 7. Noticeably absent from the Stipulation, however, is an agreed division of those assets and liabilities. Instead, paragraph 11 of the Stipulation leaves to the discretion of the trial court the division, among other things, of credit card debt.
 {¶ 17} As the trial court noted, plaintiff testified she had no credit card debt prior to the time the parties separated; defendant testified he had minimal credit card debt; and both parties maintained and paid their own credit card balances during the marriage. Plaintiff testified she incurred the credit card debt because her expenses exceeded her income. Defendant, however, testified he believed plaintiff had not reduced her spending since the separation, characterizing plaintiff's post-separation credit card spending as "excessive." (Tr. Vol. II, 337.)
 {¶ 18} The trial court determined that each party should be solely responsible for his or her post-separation credit card debt, since each party had sufficient income to pay the debt and could apply a portion of the home equity proceeds to it. In support, the trial court noted that plaintiff received child support and was due to receive a large child support arrearage payment. Moreover, the court supported its determination with written findings of fact as required by R.C.3105.171(G). Insofar as the trial court's allocation of credit card debt renders the division of assets and liabilities unequal, the trial court explained in writing its rationale for the division, and we cannot find that such allocation is inequitable or an abuse of discretion. Plaintiff's first assignment of error is overruled.
II. Second Assignment of Error
 {¶ 19} By the second assignment of error, plaintiff contends the trial court erred in dividing the proceeds of the Johnstown Road property equally between the parties. In November 1999, the parties purchased a residence on Johnstown Road in New Albany, Ohio. Plaintiff produced a copy of the general warranty deed, which lists plaintiff, defendant, and plaintiff's mother as owners of the property. Plaintiff's mother lived in the residence from November 1999 to November 2003.
 {¶ 20} Shortly after the divorce was filed, the parties sold the property. According to the parties' Stipulation, the sale generated net proceeds of $10,268, which were placed in plaintiff's counsel's trust account. Relying largely on the fact her mother's name appears on the deed, plaintiff requested that the trial court divide the proceeds in one-third increments between her, defendant, and her mother per the stipulated asset and liability statement. The trial court rejected plaintiff's request and divided the proceeds equally between plaintiff and defendant.
 {¶ 21} Plaintiff argues not only that the trial court's decision is contrary to the stipulated asset and liability statement, but that the trial court abused its discretion in so dividing the proceeds. The Stipulation, however, does not include an agreed division of that account, but gives the trial court discretion to divide the sale proceeds. The trial court's decision is not contrary to the stipulated asset and liability statement.
 {¶ 22} Further, the trial court did not abuse its discretion in refusing to allocate a portion of the net proceeds from the sale of the property at issue to plaintiff's mother. Plaintiff's mother is not a party to the action, and the trial court was not required to address any interest she may have in the property or to award her proceeds from the sale of the marital asset. Instead, the trial court appropriately allocated the property between the only parties to the action, determining their respective rights in the property, but neither recognizing nor negating any interest plaintiff's mother may have in the property, an interest plaintiff's mother may pursue if she chooses. The second assignment of error is overruled. See Donnelly v. Donnelly, Green App. No. 2002-CA-53, 2003-Ohio-1377, at ¶ 42 (stating that "[i]n the absence of other parties as third party defendants, the trial court's only obligation was to divide the assets equitably between the parties").
III. Third Assignment of Error
 {¶ 23} Plaintiff's third assignment of error contends the trial court erred in equally dividing the future net equity in the marital residence. Plaintiff argues that since she paid the mortgage payments on the marital residence during the pendency of the divorce and is required to continue making those payments until the residence is sold, defendant unfairly receives the benefit of those payments to reduce the principal balance on the mortgage. Plaintiff contends that by awarding defendant one-half of the net equity from the sale of the residence, the trial court valued the marital debt, in the form of the mortgage, on a date after trial. Plaintiff asserts the trial court should have "frozen" defendant's interest in the net equity in the marital residence as of the date of trial.
 {¶ 24} As in her first assignment of error, plaintiff purports to dispute valuation dates, when in reality she contests the trial court's allocation of marital assets. As was true in her first assignment of error, a magistrate's temporary order was entered, this one requiring plaintiff to pay the mortgage on the marital residence but not specifying whether she would receive credit for those payments. Because plaintiff moved to modify that order only as to child support, plaintiff waived her contention that she should receive credit for the mortgage payments on the marital residence made while the divorce was pending.Spier; see, also, Shattuck, supra; Stan v. Stan, Preble App. No. CA2003-01-001, 2003-Ohio-5540, at ¶ 36.
 {¶ 25} Further, plaintiff's argument fails to acknowledge that she had exclusive use of the marital residence since the parties separated in February 2004, while defendant incurred expenses in obtaining and maintaining a separate residence for himself and the children. SeeStacy v. Stacy, Ashtabula App. No. 2004-A-0076, 2005-Ohio-5289, at ¶ 36 (concluding trial court did not abuse its discretion in not awarding husband reimbursement for the portion of mortgage payments attributable to principal and interest, as husband had exclusive use of the premises during the pending divorce litigation, and the wife had to maintain a separate residence); Patridge v. Matthews (Feb. 20, 2001), Brown App. No. CA2000-04-007 (determining trial court did not abuse its discretion in failing to credit wife with mortgage payments she made on the marital residence after the parties' separation, as the wife had the benefit of living in the house, while the husband did not). Accordingly, the court here did not abuse its discretion in failing to credit plaintiff with the mortgage payments she made during the parties separation and will make until the house is sold. Thus, the third assignment of error is overruled.
IV. Fourth and Sixth Assignments of Error
 {¶ 26} Plaintiff's fourth and sixth assignments of error contend the trial court erred in failing to find that defendant engaged in financial misconduct. R.C. 3105.171(E)(3) provides that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A "distributive award" is defined as "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property." R.C. 3105.171(A)(1). The burden of proving financial misconduct is on the complaining party. Mantle v. Sterry, Franklin App. No. 02AP-286, 2003-Ohio-6058, at ¶ 31, citing Jacobs v.Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466, at ¶ 25. The trial court has discretion in determining whether a spouse committed financial misconduct. Id., citing Babka v. Babka (1992), 83 Ohio App.3d 428 andSwartz v. Swartz (1996), 110 Ohio App.3d 218.
 {¶ 27} Financial misconduct arises in circumstances where one spouse engages in some type of knowing wrongdoing and involves some form of profit or interference with another's property rights.Mantle, supra. As examples, "[t]his court has affirmed findings of financial misconduct in cases where a party has violated the court's restraining orders, dissipated marital assets without the knowledge or permission of the other party, stolen equipment, inventory and records of the party's business so as to interfere with the continued operation of the business, cashed an insurance check and used all of the money for the party's own purposes, and sold stock owned by the other party, without the other party's knowledge or permission." Id. (Citations omitted).
 {¶ 28} Plaintiff's financial misconduct argument is two-fold. Plaintiff first contends that defendant committed financial misconduct when he withdrew funds from his own savings account to pay legal fees. The trial court issued restraining orders enjoining the parties from withdrawing funds from bank accounts other than checking accounts. At that time, defendant had $10,321.79 in a savings account solely in his name and derived from his own income. Defendant testified that, during the pendency of the divorce, he withdrew most of the funds from the savings account to pay his legal fees and was not aware that doing so violated the restraining order The trial court determined that although the savings account was a marital asset, defendant did not engage in financial misconduct in withdrawing the funds because defendant was entitled to fund his defense to plaintiff's complaint.
 {¶ 29} The weight of the evidence and credibility of witnesses are issues left to the sound discretion of the trial court. White v.White, Gallia App. No. 03CA11, 2003-Ohio-6316, at ¶ 15. The underlying rationale is that the trier of fact is better situated than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh and assess credibility. Id. Accordingly, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. Id.
 {¶ 30} The trial court apparently believed defendant's assertion that he was not aware he violated the restraining order in removing funds from his savings account to pay his legal fees. Even assuming defendant's actions amounted to financial misconduct, the General Assembly's use of the term "may" in R.C. 3105.171(E)(3) indicates the court has discretion to determine whether to compensate a party for the financial misconduct of the opposing party. Peterson v. Peterson,
Ashland App. No. 02COA059, 2003-Ohio-4189, at ¶ 46. On these facts, we cannot conclude that the trial court abused its discretion in its determination. See, e.g., Schneider v. Schneider (Mar. 29, 1999), Brown App. No. CA 98-03-007 (holding that trial court did not abuse its discretion in failing to find wife engaged in financial misconduct when she removed funds from the parties' joint checking and savings accounts in violation of a restraining order, where she used a portion of the funds to pay legal fees).
 {¶ 31} Plaintiff also contends defendant engaged in financial misconduct by spending over $30,000 of marital funds from September 2003 through March 2005 on an extra-marital affair. To substantiate her claim, plaintiff submitted a detailed summary of defendant's expenditures for gifts, flowers, trips, hotels, restaurants, theater tickets and "other outings" purportedly in connection with the affair. Plaintiff testified that in compiling the exhibit, she reviewed defendant's credit card and bank statements in an effort to determine expenditures that were not attributable to the children, the family, or defendant personally. More particularly, plaintiff testified she compared the date of the expenditure as it appeared on defendant's credit card or bank statement with the dates defendant was with the children or was scheduled to work. When the expenditure did not correspond with those dates, plaintiff attributed the expense to the extra-marital affair.
 {¶ 32} Defendant testified and presented documentary evidence establishing that plaintiff's methodology was not accurate, as it did not take into account that debit card expenditures on a bank statement often reflect a date other than that on which the debt actually was incurred. Further, defendant testified and produced documentary evidence that the vast majority of the expenditures listed in plaintiff's exhibit were for activities other than his extra-marital affair, including vacations, outings and dinners with the children, dinners and outings with friends or colleagues, charitable contributions, automobile repairs, gifts for friends and colleagues, business trips, and a vacation to Pakistan to visit family. Defendant admitted, however, that he could not refute all of the expenditures listed on plaintiff's Exhibit 19A and admitted he spent $3,735.22 on activities involving his girlfriend.
 {¶ 33} After hearing the testimony of both parties and examining the evidence submitted, the trial court apparently afforded more weight to defendant's evidence than to plaintiff's. Indeed, the trial court determined that "[plaintiff's] fastidious methodology of determining [defendant's] girlfriend expenses was neither accurate, nor logical and resulted in a largely inflated conclusion." (Judgment Entry, at 11.) The trial court further noted that defendant admitted to spending $3,735 on activities involving his girlfriend, most of which were incurred after the parties separated, and he assumed responsibility for those expenses by paying his own credit card debt. In light of its assessment of the evidence, the trial court did not abuse its discretion in ordering defendant to reimburse plaintiff $1,850 or one-half of the marital money he spent on his girlfriend. Plaintiff's fourth and sixth assignments of error are overruled.
V. Fifth Assignment of Error
 {¶ 34} Plaintiff's fifth assignment of error contends the trial court erred in failing to consider her attorney fees as a marital liability subject to division between the parties.
 {¶ 35} R.C. 3105.73(A) governs the award of attorney fees and provides "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In assessing whether an award is proper, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." Id. A trial court's decision to award attorney fees in a divorce action is subject to an abuse of discretion standard. Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785,2006-Ohio-5741, at ¶ 71. A party is not entitled to attorney fees; rather, the court may decide on a case-by-case basis whether attorney fees would be equitable. Id.
 {¶ 36} The stipulated asset and liability statement establishes that as of August 31, 2005 plaintiff owed attorney fees of $33,004. At trial, plaintiff testified and produced documentary evidence that she owed $44,369 in attorney fees through June 30, 2005. Although the two figures appear to be irreconcilable, the trial court and both parties seem to have adopted the higher figure. Plaintiff testified she was unable to pay any of her attorney fees because her expenditures exceeded her salary and child support. According to plaintiff, a substantial portion of the fees arose from her attorney's numerous attempts to obtain discovery from defendant related to his alleged financial misconduct.
 {¶ 37} The trial court determined plaintiff "probably spent far too much time on the topic [of defendant's alleged financial misconduct], since most of the items occurred after the parties separated." (Judgment Entry, at 11.) The trial court nonetheless found an award to plaintiff of $3,000 to be fair due to the extra legal fees incurred relating to private investigation and financial misconduct matters. In light of the trial court's assessment of the need for the expenditure of fees, the trial court did not abuse its discretion in failing to include the remainder of plaintiff's attorney fees as marital debt subject to division between the parties. The fifth assignment of error is overruled.
VI. Seventh and Eighth Assignments of Error
 {¶ 38} Plaintiff's seventh and eighth assignments of error are interrelated and will be considered together, albeit in reverse order. Together they challenge the trial court's orders regarding child support.
 {¶ 39} In the eighth assignment of error, plaintiff maintains the trial court erred in determining the amount of child support defendant must pay. More particularly, plaintiff contends the trial court erred "as a matter of law" in considering the case a "deviation" case and in failing to determine the child support obligation on a case-by-case basis as R.C. 3119.04(B) requires.
 {¶ 40} R.C. 3119.04(B) provides that "[i]f the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." The statute further provides that "[t]he court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." Id. Should the court make "such a determination, it shall enter in the journal the figure, determination, and findings." Id.
 {¶ 41} The trial court construed R.C. 3119.04(B) to require it to "first calculate the guideline child support amount based upon a combined income of $150,000.00 and then deviate, if necessary." (Judgment Entry, at 19.) To that end, the court noted that defendant pays $10,080 per year for child care expenses and $5,046.96 per year for health and medical insurance for the children. Utilizing these figures, the trial court calculated defendant's child support obligation at $444.38 per child, per month plus processing charge. The court found this amount "to be unjust, inappropriate and not in the best interests of the children given the needs and standard of living of the children and their parents, who have a combined income of $334,472.00." Id.
 {¶ 42} The trial court then observed that plaintiff submitted a monthly budget of $14,456, slightly more than one-half of which, or $7,527.43, she allocated as children's expenses. The court determined that it was not bound to follow plaintiff in allocating two-thirds of her fixed expenses, such as mortgage, maintenance and utilities, to the children, because plaintiff's calculations did not acknowledge defendant's fixed expenses at his home. The court further observed that plaintiff's budget included items that she did not pay, including medical insurance for both children and childcare expenses.
 {¶ 43} The trial court also noted that defendant submitted a monthly budget of $9,954.13, but testified that once the marital residence was sold and he purchased or rented a larger residence, his housing expenses would increase. Referencing defendant's Exhibit NN, the court concluded that the parties' after-tax cash to meet living expenses would be equalized with a child support order of $1,050, resulting in plaintiff's receiving slightly more than one-half of the combined income of the parties regardless of their budgets. The court noted, however, that plaintiff would have the children the majority of the time and would bear most of the everyday expenses such as school lunches, everyday clothing, shoes, coats, and the like. Accordingly, the court ordered defendant to pay $700 per child, per month plus two percent processing fee.
 {¶ 44} The trial court followed the mandate of R.C. 3119.04(B) in first computing the combined child support obligation under the basic child support schedule and applicable worksheet for a combined gross income of $150,000. This court held that "[i]f a court finds that the guideline amount is unjust or inappropriate and not in the best interest of the children, the court may establish a child support amount thatdeviates from the guideline amount." Wolfe v. Wolfe, Franklin App. No. 04AP-409, 2005-Ohio-2331, at ¶ 11. (Emphasis added.)
 {¶ 45} In Wolfe, where the parties' income exceeded $150,000, the trial court determined the child support obligation by applying the child support guidelines and then considering the deviation factors in R.C. 3119.23. On appeal, the obligor argued that the trial court failed to make the required case-by-case analysis under R.C. 3119.04(B) because it considered the R.C. 3119.23 deviation factors that do not apply in cases involving combined incomes greater than $150,000. This court found that "[w]hile the trial court was not required to consider the factors pursuant to R.C. 3119.23, it is not an abuse of discretion to do so in addition to computing the child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B)." Id. at ¶ 28.
 {¶ 46} Here, the trial court determined that the guideline amount of $444.38 per child, per month was not in the best interest of the children in view of their needs and the standard of living of their parents, whose combined income is over $334,000. The trial court then deviated upward from that amount to $700 per child, per month based upon a thorough examination of all the evidence presented. In so doing, the trial court explained its reasons for not accepting the figures provided in plaintiff's budget, while still acknowledging that the children would spend more time with plaintiff than with defendant. The trial court further recognized that its determination would afford plaintiff slightly more than one-half of the parties' combined incomes. The trial court thus computed defendant's child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B). The eighth assignment of error is overruled.
 {¶ 47} Plaintiff's seventh assignment of error challenges the trial court's decision to permit defendant to pay the child support arrearage through monthly payments rather than in a lump sum out of his portion of the proceeds from sale of the marital residence.
 {¶ 48} At the time of trial, defendant had a child support arrearage of approximately $12,000 resulting from the retroactive increase in child support following plaintiff's pretrial request for additional support. The trial court ordered defendant to pay the arrearage at the rate of $500 per month until paid in full. Plaintiff contends the trial court abused its discretion in failing to order defendant to pay the arrearage from his portion of the net marital estate. Plaintiff argues the court's order unfairly requires her to wait several more years to receive child support that is already over two years past due.
 {¶ 49} We note initially that defendant contends the support arrears are paid in full, rendering plaintiff's request moot. Defendant submits with his appellate brief documentation from the Child Support Enforcement Agency that purportedly supports his contention. Our review on appeal, however, is limited to those materials in the record before the trial court. See., e.g., State v. DeMastry, 155 Ohio App.3d 110,2003-Ohio-5588, at ¶ 40, appeal not allowed (2004), 101 Ohio St.3d 1488, citing State v. Ishmail (1978), 54 Ohio St.2d 402. We therefore are unable to consider the supplemental material outside the appellate record.
 {¶ 50} Alternatively, defendant contends the trial court did not abuse its discretion in ordering the arrears be paid via monthly installments. Plaintiff cites no authority requiring the trial court to order defendant to pay the arrears in one payment. Indeed, R.C. 3123.21
governs child support arrearages and provides that "[a]n order to collect current support due under a support order and any arrearage owed by the obligor under a support order pertaining to the same child or spouse shall be rebuttably presumed to provide that the arrearage amount collected with each payment of current support equal at least twenty per cent of the current support payment." R.C. 3123.21(A). In deviating from "the twenty percent presumption," a trial court "may consider evidence of household expenditures, income variables, extraordinary health care issues, and other reasons for a deviation from the twenty percent presumption." R.C. 3123.21(B).
 {¶ 51} The General Assembly thus created a rebuttable presumption of a minimum monthly payment of 20 percent of the current support payment to address an arrearage, Lyons v. Bachelder (2005) , Morrow App. No. 2004-CA-0018, at ¶ 34, with the opportunity to deviate upward or downward from the 20 percent presumption. Here, the current support order is $1,400 per month. Twenty percent of that amount is $280, meaning the court deviated upward to a payment of $500. The trial court did not abuse its discretion in ordering an arrearage payment that is almost twice the statutory minimum. The seventh assignment of error is overruled.
VII. Ninth and Tenth Assignments of Error
 {¶ 52} Plaintiff's ninth and tenth assignments of error are interrelated and will be addressed jointly. Together they contend the trial court erred in adopting defendant's shared parenting plan as it relates to the parties' decision-making authority and international travel. A trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon a demonstration of an abuse of that discretion. Corradi v.Corradi, Mahoning App. No. 01-C.A.-22, 2002-Ohio-3011, at ¶ 10.
 {¶ 53} Both parties filed motions for shared parenting, along with proposed shared parenting plans, pursuant to R.C. 3109.04(G). Defendant's plan provides that the parties jointly participate in major decisions regarding the general health, welfare and education of the children. Plaintiff's plan generally echoed that of defendant, but plaintiff reserved to herself final decision-making authority in the event the parties could not come to an agreement on a particular issue. Apparently, the decision-making plaintiff reserved extended to decisions regarding international travel with the children and the children's religious upbringing.
 {¶ 54} In the parties' Stipulation filed on October 5, 2005, they agreed on the parenting schedule and attached it to the Stipulation, but they left the issues of decision-making authority, international travel, and religious upbringing to the discretion of the trial court. Plaintiff does not object to the trial court's findings regarding the children's religious upbringing, so we limit our discussion to the trial court's resolution of the remaining two issues.
 {¶ 55} In support of her request to be awarded decision-making authority for the children, plaintiff offered evidence that when Nadeem Jr. was born in 1993, the parties lived in Pittsburgh. In 1994, defendant moved to Pakistan for five months. During the five-month period, plaintiff had sole responsibility for rearing Nadeem Jr. Following defendant's return from Pakistan, plaintiff obtained employment in Louisiana, and the family moved there together. Defendant initially could not find employment in Louisiana; he ultimately took a position in Oklahoma. While defendant lived in Oklahoma, plaintiff remained in Louisiana for two years, where she again had sole responsibility for rearing Nadeem Jr. According to plaintiff, defendant never objected to plaintiff's decision-making ability during either of their lengthy separations.
 {¶ 56} Following Corey's birth in 1998, plaintiff was primarily responsible for the children and, without objection from defendant, made most of the decisions regarding childcare, medical issues, and extracurricular activities. The arrangement was in large part due to plaintiff's more traditional work schedule of 8:00 a.m. to 5:30 or 6:00 p.m. with no weekends. In contrast, defendant's work schedule involved some early morning, weeknight, and weekend work, including some "on-call" duties.
 {¶ 57} Plaintiff testified she does not believe she and defendant can effectively communicate to make joint decisions regarding the children. As an example, plaintiff testified that since she and defendant separated, most of their communication regarding the children has been through e-mail or, on occasion, through messages defendant enlists the children to relay to plaintiff. Plaintiff acknowledged, however, that although the process is somewhat difficult, she and defendant have at times communicated directly when picking up or dropping off the children, and she would like to continue direct communication in the future.
 {¶ 58} While plaintiff also recognized that defendant made routine decisions for the children when they were in his care, she testified she harbors some concern about defendant's ability to make decisions in the children's best interest. As an example, plaintiff recounted two incidents in which the children allegedly sustained injuries while roughhousing with one another while in defendant's care. According to plaintiff, Nadeem Jr. has a permanent one-inch scar under his eye from his injury. Plaintiff also notes Corey hit the back of his head on a table, causing significant bleeding, and defendant did not inform her of the head injury so she could monitor his condition. As further examples of defendant's suspect decision-making skills, plaintiff testified defendant did not provide any child support from the February 2004 separation date until his wages were garnished in early May 2004, would not accommodate the children when plaintiff's home experienced heating or cooling issues, and left the children unattended in his car for a brief time while he shopped.
 {¶ 59} Plaintiff also testified she is opposed to defendant's taking the children to Pakistan to visit his family. Plaintiff's main concern is the children's safety in the political turmoil in the Middle East, the children's unfamiliarity with the country, their inability to speak the native language, and defendant's demonstrated inability to make good decisions concerning their safety. Plaintiff nonetheless admitted defendant undoubtedly would attempt to protect the children from harm should the need arise and would not intentionally put them in harm's way. She further acknowledged that she and defendant visited Pakistan twice during the marriage with no incident.
 {¶ 60} Plaintiff further testified she was afraid defendant would abscond with the children if he were permitted to take them to Pakistan. As support, plaintiff noted defendant's mother and sister live in Pakistan, defendant lived there until 1989 and has dual citizenship, and defendant obtained his medical degree in Pakistan and could practice medicine there. Plaintiff further voiced that her concern was born of defendant's lack of candor on another topic: his initial refusal to admit his extra-marital affair and his continued lack of forthrightness concerning the affair.
 {¶ 61} Defendant opposed plaintiff's request to be designated final decision-maker for issues involving the children. To that end, defendant testified he was Nadeem Jr.'s full-time caretaker for approximately one year when the parties lived in Louisiana. He also testified that although his relationship with plaintiff was sometimes tense, he and plaintiff have made joint decisions regarding the children since the date of separation. He, however, admitted he and plaintiff communicated face-to-face only once since they separated; all other communication was via e-mail. Defendant testified the children had no special needs that would inhibit joint decision-making, and he believed the children's best interest would be best served if he and plaintiff continued to make joint decisions. Defendant expressed his belief that once the divorce was finalized, communication with plaintiff face-to-face would be much easier.
 {¶ 62} Regarding international travel, defendant testified he wanted to take his children to Pakistan to visit his mother, as her health precludes her traveling to the United States. He also stated that due to his familiarity with Pakistan, he believed he could keep the children safe. He further testified he never threatened to take the children to Pakistan and had no intention of absconding with the children and relocating there.
 {¶ 63} The GAL filed a written report and recommendation stating that the parties are fully capable of cooperating and collaborating in a shared parenting arrangement. The GAL noted he previously recommended to the parties a process for decision-making and urged the parties to adhere to it. According to the proposal, the party with parenting responsibilities may make routine, ordinary decisions without consulting the other parent, but decisions affecting both parents must be jointly made after meetings at which each party is encouraged to express his or her concerns, beliefs and positions regarding the subject at issue.
 {¶ 64} In the event the process does not produce a satisfactory result, the GAL's proposal would give plaintiff final decision-making authority so that the parties' inability to jointly decide would not interfere with the children's ability to lead their lives. If, however, defendant believed plaintiff's decision was not made in good faith or was unreasonable, depriving him of appropriate input into the decision-making process, defendant could ask the court to review plaintiff's conduct. If the court determined plaintiff acted in bad faith, defendant would be granted final decision-making authority.
 {¶ 65} As to international travel, the GAL concluded child abduction is not a concern, leaving only the issue of the children's safety. To that end, the GAL recommended that since plaintiff harbored significant concerns relating to the children traveling to Pakistan, defendant should consider deferring to plaintiff's concerns. The GAL proposed that plaintiff's fears might best be allayed if defendant took only Nadeem Jr. to Pakistan and postponed a trip with Corey until he turned 12. The GAL stated defendant must decide based upon his knowledge and understanding of the children, as well as their ability to travel abroad and spend time away from their mother. The GAL further stated the parties must respect each other's concerns and realize that such respect may require a compromise with which neither party is completely satisfied.
 {¶ 66} Confronted with such evidence, the trial court refused to name one parent the final decision-maker. The court noted that the parties cooperated on important decisions regarding the children, such as school placement, extracurricular activities, childcare, and counseling for Nadeem Jr., and their testimony indicated they could continue to do so. The court disagreed with the GAL's recommendation that plaintiff should be the final decision-maker if the parties' attempts to reach a decision failed.
 {¶ 67} The court further perceived plaintiff's request that defendant seek her permission for their children's international travel as an attempt to control defendant's activities with the children even though he, like plaintiff, has legal custody of the children. The court also concluded defendant never threatened to abscond with the children and would not attempt to permanently remove the children from their mother.
 {¶ 68} After reviewing both shared parenting plans, the trial court noted that neither plan adequately addressed the current parenting schedule or Stipulation. Although the trial court adopted defendant's shared parenting plan, it ordered the parties to submit certain changes to the plan. As pertinent here, the court ordered that the plan exclude language giving plaintiff final decision-making authority or preventing either party from traveling with the children outside the United States. The court further ordered the parent taking the children out of the country to provide the other parent with an itinerary, including hotels and telephone numbers and dates at each location. The court ordered the traveling parent, in the event international cell phone communication be available in the destination country, to rent a cell phone and permit the children to call the other parent at least every other day, unless the parties agree otherwise.
 {¶ 69} Plaintiff's disagreement with the trial court's decision stems largely from her position that defendant's past actions demonstrate his lack of credibility. We reiterate, however, that credibility determinations are the province of the trial court and we, as a reviewing court, may not substitute our judgment for that of the trial court on such matters. White, supra. If the trial court believed defendant and the GAL's recommendation, then competent, credible evidence exists to support the trial court's conclusion that abduction is not a risk.
 {¶ 70} As to plaintiff's contention that the trial court ignored the recommendations of the GAL in rendering its orders, we note the GAL's recommendation does not bind the trial court. Baker v. Baker,
Lucas App. No. L-03-1018, 2004-Ohio-469, at ¶ 30. "A trial court determines the guardian ad litem's credibility and the weight to be given to any report." Id. See, also, Ferrell v. Ferrell, Carroll App. No. 01-AP-0763, 2002-Ohio-3019, at ¶ 43 (holding that although the GAL's role is to investigate the child[ren]'s situation and make a recommendation to the court he or she believe is in the child[ren]'s best interest, the ultimate decision is for the trial judge and not a representative of the children). Further, the court justified its decision to reject the GAL's report on the decision-making issue, stating: (1) the GAL provided no explanation for the basis of his recommendation, (2) the court had approved hundreds, if not thousands, of shared parenting plans that did not identify a final decision-maker, and (3) the GAL acknowledged that the parties were able to cooperate and collaborate for the sake of their children. Thus, despite the GAL's recommendations, the record contains ample evidence allowing the trial court to determine otherwise. The ninth and tenth assignments of error are overruled.
VIII. Eleventh Assignment of Error
 {¶ 71} Plaintiff's eleventh assignment of error asserts the trial court erred in granting a divorce on grounds other than those of adultery. A trial court has broad discretion in determining the proper grounds for divorce, and a reviewing court will not reverse that determination absent an abuse of discretion. Buckles v. Buckles (1988),46 Ohio App.3d 102, 116.
 {¶ 72} Although plaintiff and defendant both asserted extreme cruelty, gross neglect of duty, and incompatibility as grounds for divorce, the trial court granted plaintiff a divorce on the grounds of adultery under R.C. 3105.01(C); it granted both parties a divorce on the grounds of living separate and apart without cohabitation for more than one year under R.C. 3105.01(J) and incompatibility under R.C.3105.01(K). Plaintiff contends the trial court erred in granting a divorce premised on R.C. 3105.01(J) because neither party alleged it as grounds for divorce or amended their pleadings to conform to any evidence relating to it. Plaintiff also contends the trial court erred in granting a divorce based on R.C. 3105.01(K) because defendant did not present any evidence in support, and plaintiff was not asked if the parties were incompatible.
 {¶ 73} R.C. 3105.01(J) provides that a common pleas court may grant a divorce "[o]n the application of either party, when husband and wife have, without interruption for one year, lived separate and apart without cohabitation." At the time the parties filed their pleadings, the parties had not lived separately for one year because defendant did not leave the marital residence until February 1, 2004. The parties thus could not allege such basis for divorce.
 {¶ 74} Civ.R. 15(B) provides, in part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues." Here, neither party moved to amend their pleadings under Civ.R. 15. No record evidence, however, suggests either party challenged that they had lived separately without cohabiting for one year. Absent their challenge, the trial court reasonably could infer that the parties impliedly consented to have the court try the issue. See Brooks-Lee v. Lee, Franklin App. No. 03AP-1149,2005-Ohio-2288, at ¶ 58; Moser v. Moser (1982), 5 Ohio App.3d 193, 194
(holding that where evidence relative to ground for divorce was admitted without objection, failure to amend pursuant to Civ.R. 15[B] does not affect trial of such issue).
 {¶ 75} Both parties testified defendant left the marital residence in February 2004. The trial court filed its judgment entry/decree of divorce on January 30, 2006. Absent evidence to the contrary, sufficient evidence supports the trial court's finding that the parties lived separate and apart without interruption and without cohabitation for a period in excess of one year. Thus, we cannot conclude the trial court's determination as to R.C. 3105.01(J) was in error.
 {¶ 76} R.C. 3105.01(K) provides that a court of common pleas may grant a divorce for "[i]ncompatibility, unless denied by either party." "Incompatibility, under R.C. 3105.01(K), is really not a 'ground' that has to be proven so much as a status that must be agreed on by both parties; it is a consensual grounds that is not intended to be litigated." Rodgers v. Henninger-Rodgers, Licking App. No. 02CA79, 2003-Ohio-2642, at ¶ 12, quoting Lehman v. Lehman (1991),72 Ohio App.3d 68, 71. "The requirement that the allegation of incompatibility not be denied by either party was included to prevent the unilateral declaration of incompatibility by one party which would otherwise give the court the jurisdiction to terminate the marriage and make all concomitant orders." Id., quoting Lehman at 71. The phrase "not intended to be litigated" as utilized in Lehman means that "a divorce on such ground could not be granted unilaterally over an objection of the other party * * *. If incompatibility is contested, the contest is over, and the claim must be dismissed." Rodgers, at ¶ 13, quoting Byers v.Byers (Feb. 5, 2001), Stark App. No. 2000CA000159.
 {¶ 77} Here, incompatibility was not contested. Indeed, both parties alleged it as grounds in the pleadings, and plaintiff's reply to defendant's counterclaim admitted that the parties are incompatible. Accordingly, the trial court did not err in granting both parties a divorce on the ground of incompatibility pursuant to R.C. 3105.01(K). The eleventh assignment of error is overruled.
 {¶ 78} Having overruled each of plaintiff's eleven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. Judgment affirmed.
 McGRATH and TRAVIS, JJ., concur.